## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | : |
| Plaintiff, | : |
| | : Civil Action No. 09-354-LPS |
| v. | : (CONSOLIDATED) |
| | : |
| ACER, INC., et al., | : |
| | : |
| Defendants. | : |
| | : |
| MICROSOFT CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 10-282-LPS |
| | : |
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | : |
| | : |
| Defendant. | : |

Richard D. Kirk, Stephen B. Brauerman, BAYARD, P.A., Wilmington, DE.

Raymond P. Niro, Christopher J. Lee, Richard B. Megley, Frederick C. Laney, NIRO, HALLER & NIRO, Chicago, IL.

    Attorneys for St. Clair Intellectual Property Consultants, Inc.

Richard L. Horwitz, David E. Moore, POTTER ANDERSON & CORROON LLP, Wilmington, DE.

    Attorneys for Defendants.

Kai Tseng, Craig R. Kaufman, Michael C. Ting, FREITAS, TSENG & KAUFMAN LLP, Redwood City, CA.

    Attorneys for Defendants Acer Inc., Acer America Corporation, and Gateway, Inc.

Constance S. Huttner, VINSON & ELKINS LLP, New York, NY.
Christopher V. Ryan, Avelyn Ross, Jennifer Nall, VINSON & ELKINS LLP, Austin, TX.

    Attorneys for Defendant Dell, Inc. and Lenovo (United States), Inc.


Jeffrey K. Sherwood, Leslie Jacobs, DICKSTEIN SHAPIRO LLP, Washington, DC.

    Attorneys for Defendants Toshiba Corporation, Toshiba America Information Systems,
    Inc., and Toshiba America, Inc.


William J. Marsden, Jr., Tara D. Elliot, FISH & RICHARDSON P.C., Wilmington, DE.
Lauren A. Degnan, Brian Racilla, FISH & RICHARDSON P.C., Washington, DC.

    Attorneys for Microsoft Corporation.


Chad S. Campbell, Timothy J. Franks, PERKINS COIE LLP, Phoenix, AZ.
Michael D. Broaddus, PERKINS COIE LLP, Seattle, WA.

    Attorneys for Intervenor Intel Corporation.

## MEMORANDUM OPINION

July 2, 2013
Wilmington, Delaware

Leavl P. Ars

**STARK, U.S. District Judge:**

Presently before the Court is Defendants Acer, Inc., Acer America Corporation, Gateway, Inc., Dell, Inc., Intel Corporation, Lenovo (United States) Inc., Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America, Inc., and Microsoft Corporation's (collectively, "Defendants") Motion for Summary Judgment of Laches (D.I. 637, C.A. No. 09-354; D.I. 352, C.A. No. 10-282), as well as St. Clair Intellectual Property Consultants, Inc.'s ("St. Clair") Motion for Summary Judgment Dismissing Defendants' Affirmative Defenses and Counterclaims for Inequitable Conduct (D.I. 647, C.A. No. 09-354; D.I. 296, C.A. No. 10-282).

## I.    BACKGROUND

St. Clair filed suit against Acer, Inc., Acer America Corporation, Dell Inc., Gateway Co., Inc., Gateway, Inc., Lenovo Group, Limited, and Lenovo (United States) Inc. on May 15, 2009 (D.I. 1, C.A. No. 09-354), and against Apple Inc., Toshiba Corporation, Toshiba America Information Systems, Inc., and Toshiba America, Inc. on September 18, 2009 (D.I. 1, C.A. No. 09-704) alleging infringement of U.S. Patent Nos. 5,613,130 (the "'130 patent"), 5,630,163 (the "'163 patent"), 5,961,617 (the "'617 patent"), 5,710,929 (the "'929 patent"), 5,758,175 (the "'175 patent"), 5,892,959 (the "'959 patent"), and 6,079,025 (the "'025 patent") (collectively, the "patents-in-suit") relating to power savings and management. The '929, '175, '959, and '025 patents are referred to as the "Fung patents." Microsoft Corporation ("Microsoft") filed a declaratory judgment action on April 7, 2010 for noninfringement and invalidity of the Fung patents. (D.I. 1, C.A. No. 10-282)  Intel Corporation's ("Intel") motion to intervene in the earlier filed suit was granted on June 4, 2010 and, on June 25, 2010, St. Clair filed counterclaims against Intel. (D.I. 178, 191, C.A. No. 09-354)  On June 13, 2011, the Court consolidated case

Nos. 09-354, 09-704, and 10-282. (D.I. 406, C.A. No. 09-354)

Fact discovery closed on December 16, 2011 and expert discovery closed on April 27, 2012. The Court construed the claims on August 7, 2012 and heard oral argument on numerous motions on March 27, 2013. On March 29, 2013, the Court issued a memorandum order granting Defendants' motion for summary judgment of laches and denying in part and granting in part St. Clair's motion for summary judgment dismissing Defendants' inequitable conduct defenses. (D.I. 875, C.A. No. 09-354) This memorandum opinion further explains the Court's decision on those two motions.[1]

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant

---

[1]Numerous other motions remain pending. The Court heard further oral argument on June 19, 2013.

must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

3

## III.  DISCUSSION

### A.  Defendants' Motion for Summary Judgment of Laches

A laches defense requires a showing by a preponderance of evidence that "(a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028, 1045 (Fed. Cir. 1992).  A presumption of laches arises if a patentee delays bringing suit for six or more years from the date the patentee had actual or constructive knowledge of the alleged infringing activity. *See id.* at 1028.  "[T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998).  The period of delay continues if prior products are the same or similar to the alleged infringing products. *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008).  Once the presumption is met, the burden shifts to the patentee to present evidence to create a genuine dispute with respect to the reasonableness of the delay. *See Aukerman*, 960 F.2d at 1028; *see also Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 521 (D. Del. 2010).

Defendants argue that no later than October 2002, St. Clair had constructive knowledge of activities infringing the Fung patents. (D.I. 638 at 2)  The Court agrees.  Because St. Clair did not file suit until May 15, 2009 – more than six years from the date of constructive knowledge – a presumption of laches arises.

At the time St. Clair acquired the Fung patents in June 2000, St. Clair's "slates were

4

clean" and it was in a position to pursue litigation. (D.I. 639 Ex. L at 175) Prior to the acquisition, St. Clair had been informed by Mr. Fung in April 2000 that Intel was "applying power management to desktop PC," adding, "I think [Intel] may potentially infringe on some of our patents." (*Id*. Ex. P) Shortly after the acquisition, Mr. Fung once more wrote to St. Clair suggesting that Intel may be infringing the '025 patent. Specifically, Mr. Fung wrote that "[b]oth Transmeta and Intel are making claim that they have the lowest power CPU. Guess what they both have to do to make this happen. You can find the answer by reading Claim 1 of the '025 patent." (*Id*. Ex. Q)

In October 2000, St. Clair's general counsel sent a letter to a number of computer manufacturers, including Acer, Dell, and Gateway, informing them of the Fung patents, including their titles and role in power management or power conservation. (*Id*. Exs. S, T, V, W, Y (describing letters as attempt to offer power management technology for license)) The letters state that the "power management technology is covered by patent claims" and that the patents cover "software implementation, hardware implementation, and the combination of software and hardware implementation for power management." (*See, e.g.*, *id*. Ex. S) The letters state generally that St. Clair "look[s] forward to the opportunity to discuss" the use of the patents in power management. (*Id*.)

After receiving negative responses to the letters, St. Clair's co-owner, Mr. Edward Chung, wrote to the attorney for Amphus[2] in June 2001, stating that the "next step with respect to these responses is to map patent claim charts demonstrating potential infringement between

---

[2]St. Clair acquired the Fung patents from Amphus, Inc., which Mr. Fung spun off from Vadem Corp. (D.I. 639 Ex. L at 111)

5

products of these companies and certain Amphus patent claims." (*Id*. Ex. Y) By May 2002, Strategic Technology Solutions, Inc. ("STS"), which had been retained by St. Clair as an outside technology consultant, informed St. Clair – after spending 32 hours reviewing the power management portfolio – that the Fung patents "appear relevant to APM, ACPI/OSPM and PCI Power Management used on PC's." (D.I. 640 Ex. BB) By October 2002, STS had provided St. Clair complete claim charts for the '929, '959, and '025 patents. (*Id*. Exs. CC, DD)

The Court concludes that the above evidence is sufficient to establish that St. Clair had actual or constructive knowledge of potentially infringing activities by October 2002. *See Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337-38 (Fed. Cir. 1998) (stating that constructive knowledge of potentially infringing activities triggers laches); *see also Johnston v. Standard Min. Co.*, 148 U.S. 360, 370 (1893) ("[T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."). The evidence presented by Defendants establishes that St. Clair, Mr. Fung, and Mr. Chung were aware of the existence of products embodying "technology similar to that for which [the patentee] holds a patent and [which] uses that similar technology to accomplish a similar objective." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 679 F. Supp. 2d 512, 520 n.42 (D. Del. 2010). By its failure to act, despite this knowledge, St. Clair "shirk[ed]" its "duty to examine the product or device more closely to ascertain whether it infringes . . . on peril of triggering the laches period and perhaps ultimately losing [its] right to recover damages for the infringement." *Id*.

St. Clair attempts to avoid the laches presumption by arguing that any delay was

6

reasonable. (D.I. 766 at 18-19)  The Court is not persuaded.  For instance, St. Clair describes

delay as reasonable "where efforts were made to conduct the analysis and the type of analysis

was expensive, time-consuming, required particular expertise, and was heavily reliant upon the

public availability of information on the design of computer components and the particular

implementations of those components by computer manufacturers." (*Id*. at 19)  Under the

circumstances presented here, none of these facts renders St. Clair's delay reasonable. *See Hall*

*v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996) (finding poverty and inability to

find counsel insufficient to defeat laches defense) (citing *Leggett v. Standard Oil Co.*, 149 U.S.

287 (1893)).  Even accepting that undertaking the infringement analysis was time-consuming,

this does not excuse St. Clair's delay, particularly because St. Clair's "slates were clean" and

STS had completed claim charts by 2002.  The Court concludes that there is no genuine dispute

over the reasonableness of St. Clair's delay.

St. Clair seeks to avoid the presumption of laches also by arguing that the trigger date for

laches is the date of the first ***accused*** infringement, August 2004, regardless of the existence of

any earlier potentially infringing product.[3]  (D.I. 766 at 14)  In the alternative, St. Clair argues

that the pre-2004 products are immaterial because a new laches period began as a result of design

changes implemented in the newer accused infringing products.  (*Id*.)  These changes include the

addition of the intelppm.sys file to Windows XP Service Pack 2, and additional capability

allowing switching between "six performance states under control of the Windows XP operating

---

[3]At the March hearing, St. Clair took the position that pre-2004 versions of Windows
infringe and that such infringement is supported by the record.  The Court concluded that St.
Clair failed to meet its burden of establishing that pre-2004 versions of Windows infringe.  (D.I.
873)

system based on CPU demand." (*Id.* at 14, 15, & n.6)

The Court does not agree with St. Clair. St. Clair cannot avoid a laches defense by narrowing its infringement contentions, especially given that in 2002 St. Clair conducted an analysis of pre-2004 products. In its infringement contentions, St. Clair does not rely on any information unavailable prior to 2004. Moreover, any change affecting the P states cannot be a material change when infringement does not necessarily require P states at all. (D.I. 827 at 6) The record does not contain evidence from which a reasonable factfinder could conclude that changes were made to the accused products which would trigger a new laches period.

As St. Clair fails to rebut the presumption of laches, the Court will grant Defendants' motion.

## B.   St. Clair's Motion for Summary Judgment Dismissing Defendants' Affirmative Defenses and Counterclaims for Inequitable Conduct

St. Clair has moved for summary judgment dismissing Defendants' defense of inequitable conduct. Defendants assert four theories in support of their inequitable conduct defense: (1) Mr. Fung misrepresented that he was the sole inventor of the Fung patents; (2) Mr. Fung and/or Vadem patent attorneys withheld U.S. Patent No. 5,560,024 (the "Harper patent") despite being aware of its materiality; (3) Mr. Fung and/or Vadem patent attorneys intentionally withheld three other prior art references; and (4) Mr. Fung intentionally misrepresented that Vadem was entitled to "small entity" status in connection with the '130 patent. (D.I. 649 at 2-4) The Court addresses each of these theories below.

### 1.   Inequitable Conduct

To prevail on a claim of inequitable conduct, the accused infringer must prove by clear

8

and convincing evidence that the patentee: (1) "acted with the specific intent to deceive the PTO"

and (2) made a material misrepresentation or omission. *Therasense, Inc. v. Becton, Dickinson &*

*Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). To meet the clear and convincing standard, specific

intent to deceive must be "the single most reasonable inference able to be drawn from the

evidence." *Id*. "Indeed, the evidence must be sufficient to require a finding of deceitful intent in

the light of all the circumstances." *Id*. (internal quotations omitted).

### 2. Sole Inventorship

St. Clair urges the Court to dismiss Defendants' inequitable conduct defense because the

evidence compels the conclusion that Mr. Fung is the sole inventor of the Fung patents. (D.I.

649 at 16) By contrast, Defendants argue that there is a co-inventor, Richard Peters. The Court

concludes that there remain genuine issues of material fact regarding Mr. Peters' inventorship

and will deny St. Clair's motion with respect to this ground for inequitable conduct.[4]

In 1989, Mr. Peters filed United States Patent Application No. 07/448,051 (the "Peters

Application") claiming a power management unit. (D.I. 793 at 4; D.I. 794 Ex. 10) Mr. Peters

declared under oath that he was the inventor of his claimed invention. (D.I. 794 Ex. 10 at

MSSC_0875255) Mr. Peters stated that Mr. Fung and Chinkok Shing were aware of his

invention and encouraged him to file a patent application. (D.I. 794 Ex. 11 ¶ 7) Indeed, Mr.

Lovejoy, the prosecuting attorney for the Fung patents, copied the Peters Application to Mr. Fung

---

[4]Defendants have also asserted that there are issues regarding Mr. Fung's credibility, based, for example, on documents that may contradict Mr. Fung's statements that he was never told about the Peters Application. (D.I. 794 Ex. 2 at 892-95) The Court agrees and denies summary judgment for this reason as well. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158-59 (Fed. Cir. 2004) (stating that where "party offers specific facts that call into question the credibility of the movant's witnesses," summary judgment may not be appropriate).

before and after filing. (D.I. 794 Ex. 17)

Defendants assert that overlaps between the Peters Application and claims of the Fung patent present genuine issues as to whether Mr. Fung was the sole inventor of the Fung patents. The Court agrees. Defendants' expert, Dr. Donald Alpert, opines that there is substantial overlap between the Fung patents and the Peters Application. (D.I. 794 Ex. 30 at 4) For example, he states that claim 9 of the '929 patent is supported by the written description of the Peters Application. (*Id.* ¶¶ 8-13) Further, Dr. Alpert opines that claim 20 of the Peters Application overlaps with claim 4 of United States Patent No. 5,396,635, the first application issued in the family of patents leading to the Fung patents. Both claims describe detecting computer system activity and disclose a means-plus-function claim with corresponding structure of a monitor and power control. (*Id.* ¶¶ 15, 16) Dr. Alpert opines that other claims of the Fung patents similarly overlap with Mr. Peters' claimed activity monitor. (*Id.* at 2-6) Additionally, the intrinsic record for the Fung patents cross references the Peters Application. (D.I. 646 Ex. 31 at MSSC_0874429)

St. Clair's response relies primarily on statements from its patent attorney, David Lovejoy, who also filed the Peters Application. (D.I. 793 at 3-4) Mr. Lovejoy evidently conducted an investigation into inventorship and concluded that Mr. Fung was properly listed as the sole inventor of the Fung patents. (D.I. 649 at 17; D.I. 826 at 5-6) Mr. Lovejoy's statements are not supported by any contemporaneous documentation and, to the contrary, appear to conflict with his actions in assisting Mr. Peters in filing the Peters Application.

Further, St. Clair admits that Mr. Peters is the author of code found in Table 1 of the Fung patents, although St. Clair argues that this code is not part of the *claimed invention*, and even it

10

was, it would not be a **substantial** contribution. (D.I. 826 at 4)  In the Court's view, whether Mr. Peters' contribution to Table 1 is a substantial contribution presents a genuine issue of material fact, rendering summary judgment inappropriate.

In short, there remain genuine issues of material fact as to Mr. Fung's knowledge of the Peters Application and whether Mr. Fung had a specific intent to deceive the PTO by representing that he was the sole inventor of the Fung patents.  For the reasons discussed, the Court will deny the motion on this ground.

### 3.    The Harper Patent

St. Clair concedes that there are genuine disputes over whether the Harper patent is material.  (D.I. 649 at 18)  However, St. Clair argues that because Defendants cannot meet their burden of establishing specific intent, the Court should grant summary judgment of no inequitable conduct with respect to the Harper patent.  The Court agrees with St. Clair.

Defendants have failed to establish that either Mr. Fung or Vadem's attorneys had knowledge of the Harper patent.  Defendants generally assert that a reasonable factfinder could conclude that Mr. Fung or Vadem's attorneys were aware of the Harper patent and, therefore, intentionally withheld it from the PTO.  (D.I. 793 at 17)  In support, Defendants state that Mr. Fung "closely followed" the prosecution of the Fung patents and that Mr. Fung was aware of claims related to the same clock control technology claimed in the Harper patent.  (D.I. 793 at 17)  Defendants, however, fail to point to any evidence supporting their contention that Mr. Fung was aware of the Harper patent.  There is insufficient evidence from which a reasonable factfinder could conclude that Mr. Fung had actual knowledge of the Harper patent or had a specific intent to deceive the PTO by not disclosing it.  *See generally Therasense*, 649 F.3d at

11

1290 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.").

Likewise, Defendants fail to assert any specific facts or evidence demonstrating that Vadem's attorneys were aware of the Harper patent. As far as the record reveals, the Harper patent was first raised during the prosecution of the then-pending claims of the '929 patent. (D.I. 649 ¶ 34) At the time the Harper patent was raised, Mr. Lovejoy and Ian McAusland, another attorney who prosecuted the Fung patents (*id*. ¶ 32), were not involved in the filing of the '929 patent. (*Id*. ¶ 38)

As Defendants have failed to produce evidence connecting the Harper patent to Mr. Fung or Vadem's attorneys, the Court will grant St. Clair's motion on this ground.

### 4. Other Prior Art References

Defendants have withdrawn their prior contention that Mr. Fung or Vadem's attorneys were aware of and intentionally withheld three additional prior art references: the Bedard, Rose, and Hirosawa patents. (D.I. 649 at 19; D.I. 793) Thus, the Court will grant St. Clair's motion for summary judgment of no inequitable conduct with respect to these three references.

### 5. Small Entity Status

Finally, St. Clair requests that the Court grant its motion to dismiss Defendants' inequitable conduct defense based on Mr. Fung's alleged intentional misrepresentation that Vadem was entitled to "small entity" status during prosecution. St. Clair argues that Defendants have failed to establish a genuine issue of fact with respect to Mr. Fung's specific intent to deceive the PTO. (D.I. 649 at 20) The Court agrees.

Defendants rely on two facts to establish a genuine dispute: (1) the small entity statement

12

signed by Mr. Fung "states unambiguously on its face that a small entity must have fewer than 500 employees, and that any other organization having rights to the invention must qualify as a small entity" (D.I. 793 at 20); and (2) Vadem was in financial trouble in the mid 1990s, creating a financial incentive for Mr. Fung to misrepresent Vadem's status. (*Id.*)

Vadem always had less than 500 employees. The small entity status form does not "unambiguously" state that the number of employees for small entity status includes employees of any other entity having a license with Vadem. Instead, the small entity status form states that the number of employees includes "those of its affiliates," but does not specifically include licensees. (D.I. 794 Ex. 39) Moreover, once Mr. Fung's mistake was realized, St. Clair took steps to correct the small entity status and paid the full fees with respect to the patent.

Thus, Defendants have failed to raise a triable issue of specific intent with respect to Mr. Fung's alleged intent to deceive the PTO regarding Vadem's small entity status. The Court will grant St. Clair's motion on this ground.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' motion for summary judgment of laches, and grant in part and deny in part St. Clair's motion for summary judgment dismissing Defendants' inequitable conduct defenses.