IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 09-354-LPS |
| TOSHIBA CORPORATION, et al., | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

Pending before the Court are Defendants' Toshiba Corporation, Toshiba America Information Systems, Inc., and Toshiba America, Inc.'s (collectively, "Toshiba") (1) Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 5,630,163 and 5,613,130 (D.I. 631)[1], and (2) Motion for Spoliation Sanctions against St. Clair Intellectual Property Consultants, Inc. ("St. Clair") (D.I. 641). For the reasons discussed below, the Court will deny the motions.

## BACKGROUND

This is a patent infringement action originally brought by St. Clair against Toshiba and several other defendants in 2009.[2] Of the original seven patents-in-suit, St. Clair now asserts infringement of only two: U.S. Patent Nos. 5,613,130 (the "'130 patent") and 5,630,163 (the "'163 patent"). Fact discovery closed on December 16, 2011 and expert discovery closed on April 27, 2012. The Court construed the claims on August 7, 2012. (D.I. 747) The Court heard

---

[1] Unless otherwise noted, all citations to the docket refer to C.A. No. 09-354.

[2] St. Clair filed suit against Acer, Inc., Acer America Corp., Dell Inc., Gateway Co., Inc., Gateway, Inc., Lenovo Group, Limited, and Lenovo (United States) Inc. on May 15, 2009 (D.I. 1), and against Apple Inc. and Toshiba on September 18, 2009 (C.A. No. 09-704, D.I. 1).

oral argument on pending motions on March 27, 2013 and August 6, 2014 (D.I. 882, 918), and has ruled on multiple summary judgment and *Daubert* motions (D.I. 873, 874, 875, 876, 877).

Toshiba and several other defendants filed the motion for summary judgment of non-infringement on May 25, 2012 (D.I. 631), and the motion for spoliation sanctions on May 30, 2012 (D.I. 641). With the exception of Toshiba, all other defendants originally moving for summary judgment and spoliation sanctions against St. Clair have been dismissed. (D.I. 897, 904, 905; *see also* C.A. 10-282, D.I. 550)

## MOTION FOR SUMMARY JUDGMENT

### I.  Legal Standards

A grant of summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the Court is able to determine that "there is no genuine issue as to any material fact" and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005); *see also* Fed. R. Civ. P. 56(c).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## II. Discussion

Toshiba moves for summary judgment of non-infringement of the '130 and '163 patents. For the reasons discussed below, Toshiba's motion for summary judgment is denied.

### A. '130 Patent

Toshiba contends that the accused products do not infringe the '130 patent because they are not sold with pluggable cards inserted into the systems. (D.I. 632 at 9) Toshiba further argues that even if pluggable cards were sold in the system, the accused products use ExpressCards, which are fundamentally different from the claimed use of the PCMCIA standard. (*Id.* at 9-10) For example, ExpressCards use different voltages, whereas the PCMCIA standard selects a card's voltage. (*Id.* at 10-11) Therefore, Toshiba argues, the accused products do not

3

meet the pluggable claim limitations, nor do they meet the power switching means associated with the PCMCIA standard claim limitation.

St. Clair counters with the opinion of Edmund Ku in support of its position that the claimed pluggable card element is met in the accused products. (D.I. 777 at 9) Mr. Ku testified in his deposition that it is possible that a system infringes even if it does not have a card, as long as it is able to receive a card. (D.I. 777 ex. 1 at 82-83) Mr. Ku also stated that a person of ordinary skill in the art would understand that the '130 patent requires that a computer system have the ability to plug a card, and does not require that the system actually have the card. (*Id.* at 78-79)

As for the difference between ExpressCards and the PCMCIA standard, Mr. Ku provided testimony in his deposition (after reserving the opportunity to do so in his expert report) (*see id.* ex. 3 at 18) that there is infringement under the doctrine of equivalents, opining that ExpressCards were not fundamentally different than the PCMCIA standard, but were instead equivalents (*id.* ex. 1 at 98-99). Mr. Ku stated that the accused products infringe the '130 patent because, even though there are different voltages, they are "simultaneous, and they work lockstep with each other, and you cannot split them up," making them effectively operate as a single voltage. (*Id.* at 101)

The Court concludes that the record demonstrates a genuine dispute of material fact as to infringement of the '130 patent. A jury could reasonably credit the expert opinion of Mr. Ku and, thereby, find infringement by the accused products. Accordingly, the Court will deny summary judgment.

## B. '163 Patent

Toshiba argues that the limitations of the '163 patent are also not present in the accused products because these products: (1) use an HD Audio Link which operates at a constant clock rate and does not change bandwidth, and does not satisfy the bus processing means requirement; (2) are not sold with two different audio codecs – HD Audio and AC 97 Audio – in use simultaneously;[3] (3) are not sold with a PCI-Express x1 device connected across a common bus; and (4) are not sold with multiple external monitors connected. (D.I. 632 at 1-3) St. Clair argues that the Court should deny the motion due to genuine issues of material fact.

With respect to the first issue, St. Clair argues that Toshiba's position is based on an incorrect construction of "bandwidth," which has not been adopted by the Court. In St. Clair's view, "bandwidth" should be given its plain and ordinary meaning, i.e., "the capacity for data transfer of an electronic communication system," the "transmission capacity of an electronic communication device or system," or "the amount of data that can be passed along a communications channel in a given period of time." (D.I. 792 ¶ 5)[4] Based on this construction, St. Clair argues that a fixed clock rate does not necessarily have a fixed bandwidth. (D.I. 777 at 12; D.I. 792 ¶¶ 6-8) The Court agrees and concludes that, based on the plain meaning of bandwidth, there is a genuine dispute of material fact with respect to St. Clair's theory of

---

[3]St. Clair has withdrawn an infringement theory and recognizes that computers were sold with *either* a HD Audio codec *or* an AC 97 codec. (D.I. 777 at 8)

[4]The parties did not request that the Court construe "bandwidth." Nor did the Court specifically construe "bus bandwidth" when it construed the longer disputed claim term "special purpose buses each connected to the processor and to one of the external devices and each operating at a different bus bandwidth corresponding to the bus bandwidth associated with the bus device to which it is connected." (D.I. 747 at 21, 24-25)

5

infringement.

St. Clair has also established a genuine dispute of material fact regarding a second theory of infringement. Although St. Clair concedes that devices configured to use the AC 97 Audio and HD Audio codecs simultaneously do not exist (D.I. 777 at 14), St. Clair has presented evidence that at least some versions of the accused systems could be found to infringe the '163 patent because they have used configurations of *either* AC 97 Audio *or* HD Audio Link to connect to HD Audio devices (*id.* at 13-14; *id.* ex. 4 at 49).

With respect to St. Clair's third and fourth theories of infringement, Toshiba argues that summary judgment is appropriate because it has never sold two external bus devices, such as two computer monitors or a monitor and PCI-Express x1 device, attached to a computer processor.[5] (D.I. 632 at 15) St. Clair counters that nothing in the '163 patent requires the devices to be attached (D.I. 777 at 15) and direct infringement may be found where one sells or offers to sell all of the components of a claimed system, even if the components are sold separately and are required to be assembled by the customer (D.I. 916 at 3).

In support of the latter proposition, St. Clair cites to *Immersion Corporation v. Sony Computer Entertainment America, Inc.*, 2005 U.S. Dist. LEXIS 4777 (N.D. Cal. Jan. 10, 2005). There, the patents-in-suit claimed devices for providing tactile feedback to users of interactive computer applications. *Id.* at *4. The court rejected the defendant's argument that it did not infringe the patents as a matter of law because it only sold the separate parts making up such a system, holding instead that a "jury could reasonably have found that [Sony] sells a complete and

---

[5]Toshiba also makes this argument with regard to the "pluggable card" requirement of the '130 patent, i.e., that it has never sold a device with a pluggable card attached. (*See* D.I. 632 at 9; D.I. 917 at 2) The Court reaches the same conclusion in both instances.

operable system or apparatus rather than mere constituent parts, despite the fact that most of the consoles, controllers and games are sold separately." *Id.* at *16. At least one other court has reached a similar conclusion. *See EBS Auto. Servs. v. Illinois Tool Works, Inc.*, 2011 WL 4021323, at *9 (S.D. Cal. Sept. 12, 2011) (factual dispute existed as to whether sale of separate components of claimed brake fluid removal system constituted infringement).

Likewise, here, the Court concludes that a jury could reasonably find direct infringement of the '163 patent under St. Clair's theories of infringement. Toshiba does not dispute that it sells the separate components that, if attached together, may infringe the patent. (*See* D.I. 918 at 15-16) Furthermore, St. Clair cites to the expert report of Mr. Wagner, who opines on the benefits of attaching dual monitors, which would be infringing. (D.I. 777 at 17; *id.* ex. 5 ¶¶ 403-10) Accordingly, the Court will deny Toshiba's motion for summary judgment.

## MOTION FOR SPOLIATION SANCTIONS

### I. Legal Standards

In patent infringement actions, the imposition of sanctions for spoliation of evidence is controlled by regional circuit law. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345 (Fed. Cir. 2011). Spoliation occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). If a court concludes that a party has spoliated evidence, then the court must determine the appropriate level of sanctions by weighing: (1) the spoliator's degree of fault and personal responsibility; (2) the prejudice suffered by the opposing party; and (3) the availability of a lesser sanction that will

7

avoid substantial unfairness to the opposing party and, if necessary, deter future spoliation. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

## II. Discussion

The parties dispute whether the destruction of evidence occurring between 1998 and 2010 by two prior owners of the patents-in-suit, Vadem and Amphus, rises to the level of spoliation of evidence meriting sanctions. Specifically, Toshiba argues that there were several instances of spoliation occurring through this period, including: Vadem's destruction of 12,000 pounds of documents from 1998 to 1999, Amphus' destruction of 68 boxes of documents in 2004 and an additional unknown quantity in 2005 when it moved locations, and the destruction of a box of backup media by Henry Fung, Vadem's CEO, and his attorney, BJ Olson, in 2010. (D.I. 642 at 3-8) Toshiba contends that the destruction of this evidence was spoliation and warrants the sanction of dismissal of this action because: (1) Vadem anticipated litigation as far back as 1996-1998 and, thus, had a duty to preserve relevant evidence (*id.* at 4, 14); (2) St. Clair had control of the documents because Vadem was obligated to maintain the documents for the benefit St. Clair (*id.* at 14); (3) Mr. Fung and Ms. Olson acted recklessly and in bad faith by destroying the backup tapes which they knew had already been identified in subpoenas directed to Fung and his companies (D.I. 878 at 3); and (4) the destroyed data contained evidence relevant to Defendants' affirmative defenses to infringement (D.I. 642 at 17).

St. Clair responds that Toshiba's argument is "logically unsound" because the documents were owned by a third party and destroyed by a third party, and it was Amphus – not Vadem – that had a contractual obligation to St. Clair. (D.I. 778 at 1) St. Clair also argues that Toshiba has put forth no evidence that the backup tapes were relevant or even restorable, and on the

8

contrary, these documents were largely irrelevant (*id.* at 15-16); Vadem had no duty to preserve any materials until 2009 (*id.*); and, finally, that numerous pieces of evidence show that Vadem lacked bad faith when it destroyed the documents (*id.* at 19-20).

The Court finds that Vadem's destruction of documents does not constitute spoliation by St. Clair. It is well-established that "a finding of bad faith is pivotal to a spoliation determination." *Bull*, 665 F.3d at 79. Toshiba has not put forth sufficient evidence to support a finding of bad faith. With respect to documents destroyed in 1998-1999, 2004, and 2005, Toshiba has not shown *any* intent to suppress evidence; to the contrary, the record suggests that a benign explanation is more plausible. (*See* D.I. 778 ex. 19 at ALT00000001) (stating that 68 boxes were destroyed because they had aged out under standard record retention requirements) Even were the Court to find that St. Clair exercised control over these documents and had a duty to preserve them – both of which St. Clair disputes – Toshiba's failure to show bad faith on the part of St. Clair for the destruction of documents during this period defeats Toshiba's effort to establish spoliation.

The destruction of the backup data in 2010 is a more complex issue. It is likely that the backup data contained relevant information: for example, Toshiba contends that many missing documents relating to semiconductor chips would have been relevant to a failure-to-mark defense by allowing Toshiba to determine whether particular chips practiced the patents-in-suit.[6] (D.I. 642 at 9-10) Moreover, St. Clair's duty to preserve this information is not in dispute, as St. Clair

---

[6]While there may be some prejudice to Toshiba from the destruction of this evidence, that prejudice is at least substantially reduced due to the undisputed fact that St. Clair produced to Toshiba user manuals and schematics sufficient to determine whether there was a marking obligation.

9

had already commenced litigation and notified Vadem that it would be subject to document production requests and/or subpoenas. (*See* D.I. 778 ex. 5 at ALT00000195) It also appears that St. Clair had control over the documents. For example, Vadem, Mr. Fung, and St. Clair had an established procedure to copy and convey documents for the purposes of this suit (*see id.* ex. 5), and Mr. Fung testified to his belief that Vadem was subject to these obligations (D.I. 644 ex. 1 at 546-47).

Nonetheless, the record is not sufficient to support a finding of bad faith, and the Court is not persuaded that St. Clair and Vadem's destruction of the boxes of information was due to anything worse than "inadvertence, negligence, inexplicable foolishness, or part of the normal activities of business or daily living." *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 270 (W.D. Pa. 2012). Not only were St. Clair's attorneys unaware of the destruction of evidence until 2011 (*see* D.I. 778 ex. 14 at ALT00000494), but testimony from Ms. Olson suggests that she believed all the contents of the boxes had been copied (*see, e.g.*, D.I. 778 ex. 26 at 289-91).

While the nearly complete destruction of many of Vadem's historic files is worrying (and potentially negligent), the record does not support sanctioning St. Clair for spoliation.

## CONCLUSION

Because the Court concludes that there remain genuine factual disputes regarding infringement of the '130 and '163 patents, and the Court concludes that the record does not support a finding of bad faith destruction of relevant documents, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment of Non-Infringement (D.I. 631) and Motion for Spoliation Sanctions (D.I. 641) are DENIED.

IT IS FURTHER ORDERED that the parties shall meet and confer and submit, no later

than September 12, 2014, a joint status report, indicating among other things how soon they can be ready for trial and the length of time they request for their trial presentations.

August 27, 2014
Wilmington, Delaware

_____
UNITED STATES DISTRICT JUDGE