IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ST. CLAIR INTELLECTUAL                )
PROPERTY CONSULTANTS, INC.,           )
                                      )
            Plaintiff,                )
                                      )       Civil Action No. 09-354 (KAJ)
      v.                              )
                                      )
TOSHIBA CORPORATION, et al.           )
                                      )
            Defendants.               )

## MEMORANDUM OPINION

---

Richard D. Kirk, Esq., Stephen B. Brauerman, Esq., Vanessa R. Tiradentes, Esq., Bayard, P.A.,222 Delaware Avenue - Suite 900, P.O. Box 25130, Wilmington, DE 19899, Counsel for Plaintiff, St. Clair Intellectual Property Consultants, Inc.
      Of Counsel:  Raymond P. Niro, Esq., Christopher J. Lee, Esq., Richard B. Megley, Esq., Frederick C. Laney, Esq., Niro, Haller & Niro, 181 W. Madison – Suite 4600, Chicago, IL   60602

Richard L. Horwitz, Esq., David E. Moore, Esq., Potter Anderson & Corroon LLP, Herfules Plaza, 6th Floor, 1313 N. Market Street, Wilmington, DE 19801, Counsel for Defendants Toshiba Corporation, Toshiba America Incormation Systems, Inc., and Toshiba America, Inc.
      Of Counsel:  Jeffrey K. Sherwood, Esq., Leslie L. Jacobs, Jr., Esq., Daniel G. Cardy, Esq., Dickstein Shapiro LLP, 1825 Eye Street, NW, Washington, DC   20006

---

October 2, 2015
Wilmington, Delaware



**JORDAN,** *Circuit Judge, sitting by designation*

Plaintiff St. Clair Intellectual Property Consultants, Inc. ("St. Clair") has

filed a Motion for a New Trial. (Docket Item ["D.I."] 992.)[1] The briefing in

support of the Motion suffers from a number of flaws,[2] the primary one being that

St. Clair's assertions of error are, in the end, simply unsupported. Therefore, as

more fully discussed below, I will deny the motion.

## I.   BACKGROUND

This is a patent infringement action originally brought by St. Clair against

Toshiba, Inc. ("Toshiba") and several other defendants in 2009, asserting

infringement of seven patents.[3] Of the original patents and defendants, only one

patent and one defendant remained at the time of trial. St. Clair claimed that

Toshiba infringes claims 1 and 27 of U.S. Patent No. 5,630,163 (the '163 patent).

A jury returned a verdict of non-infringement on June 19, 2015 (D.I. 978, 979),

---

[1] Unless otherwise noted, all citations to the docket refer to C.A. No. 09-354.

[2] The second paragraph of St. Clair's brief exemplifies the problem. It asserts that St. Clair was harmed due to the admission of "only four" of the "hundreds of exhibits on the plaintiffs [sic] trial exhibit list." (Pl.'s Br. at 2 (D.I. 997).) But although St. Clair may have placed hundreds of exhibits on its list, it offered into evidence only ten, including the four admitted. (Plaintiff's Trial Exhibit List kept by the clerk's office). The technically accurate statement is thus badly misleading and undermines St. Clair's credibility.

[3] St. Clair filed suit against Acer, Inc., Acer America Corp., Dell Inc., Gateway Co., Inc., Gateway, Inc., Lenovo Group, Limited, and Lenovo (United States) Inc. on May 15, 2009 (D.I. 1), and against Apple Inc. and Toshiba on September 18, 2009 (C.A. No. 09-704, D.I. 1).

and judgment on the verdict was entered on June 29, 2015.  (D.I. 983.)  St. Clair

then timely filed the present Motion.  (D.I. 992.)

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 59(a), the decision of whether to

grant a new trial rests within the sound discretion of the District Court.  *Allied*

*Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Wagner by Wagner v. Fair*

*Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995).   And, when the motion

for a new trial is predicated on asserted errors in evidentiary rulings that were

themselves discretionary, the motion is subject to particularly "broad discretion."

*Griffiths v. CIGNA Corp.*, 857 F. Supp. 399, 410 (E.D. Pa. 1994) *aff'd*, 60 F.3d

814 (3d Cir. 1995).  Although the standard for granting a new trial is less

demanding than the standard for ordering judgment as a matter of law, the bar is

not set low.  A new trial is appropriate when there is "a verdict contrary to the

great weight of the evidence" such that another trial is "necessary to prevent a

miscarriage of justice." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir.

1988).

## III.   DISCUSSION

### A.    Limitations on Use of Toshiba Schematics by Ted Drake

St. Clair contends that I erred by limiting the testimony of its technical

expert, Mr. Ted Drake, to the opinions put forth in his expert report.  In particular,

St. Clair takes issue with the fact that Drake was allowed to testify regarding

3

Toshiba schematics[4] only to the extent that those schematics were referenced and discussed in his expert report. It also complains of the supposed exclusion from evidence of the schematics themselves. St. Clair further contends that, between the pre-trial hearing and Drake's testimony, I reversed my initial ruling on the acceptable boundaries for his testimony. It is wrong on all three points.

The Federal Rules of Civil Procedure demand that an expert report include "a complete statement of all opinions the witness will express," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i-iii). At the pretrial conference, I emphasized that this rule would be enforced. In particular, I noted that it would be "legal error to let [Drake] get on the stand and start talking about stuff outside his expert reports." (Pretrial Conf. Tr. 55:18 - 20, May 15, 2015.)

Drake's expert report included a single reference to the three Toshiba schematics. The schematics appear only in a claim chart which cites to the schematics as evidence that Toshiba's products practice a single, specific limitation of claim 1 in the '163 patent – the "data processing system" limitation. (*See* Pl.'s Br. Ex. 4 (D.I. 997).) St. Clair offered no other instances in which any Toshiba schematics were cited by Drake in his report, nor did it point to anything in his report that actually evaluated any Toshiba schematic in light of the '163

---

[4] Drake's report referenced three schematics produced by Toshiba. (Pl.'s Br. App 4 at 1 (D.I. 997) (referencing schematics identified as TOSH00009586, TOSH00009828, and TOSH00010234).) The three documents were often discussed as if they were a single entity during arguments about their use at trial.

patent.  St. Clair effectively conceded at trial that Drake had offered no additional opinion on any Toshiba schematic (Trial Tr. Vol. A, 331:3 - 4, June 15, 2015 (admitting that Drake "does not use the Toshiba schematic as a running example")), yet St. Clair still tried to convince me that he should be able to opine about Toshiba schematics showing something beyond the "data processing system" limitation.  The specific argument was that a Toshiba schematic depicts a system that "works the exact same way" as "how the Intel architecture works." (Trial Tr. Vol. A, 330:14 - 331:6, June 15, 2015.)  Drake had offered an opinion in his expert report about how the Intel architecture functioned, but the problem for St. Clair was - and remains - that Drake never said anything about the Intel architecture being reflected on Toshiba schematics.

Allowing Mr. Drake to testify beyond the bounds of his expert report would have constituted a direct violation of Rule 26, defeating the rule's demand that the report include "a complete statement of all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B)(i).  Thus, I limited Drake to discussing only the schematics identified in his report and only to the extent he had rendered an opinion on them in his report.  (Trial Tr. Vol. A, 332:19 - 333:13, June 15, 2015 ("[I]f you want to show Mr. Drake the schematic and say, did you look at this and decide there was a data processing system, he can say, yes, I did, and yes, there is a data processing system, but if you want him to say, here is how the connections work in that data processing system, I'm not going to let you do that with this

diagram, *because he didn't do that in his report.*" (emphasis added)).) That ruling

was sound and certainly is not a basis for granting a new trial.

St. Clair also asserts that I erred by refusing to admit the three Toshiba

schematics themselves into evidence. The fact is, though, that St. Clair did not

offer those documents into evidence during trial. It cannot now claim that I erred

in not admitting documents that were not offered as exhibits. St. Clair is correct

that the Toshiba schematics were a point of significant debate during trial (Trial

Tr. Vol. A, 319:12 - 333:13, June 15, 2015; Trial Tr. Vol. B, 410:12 - 412:9, June

16, 2015), but those discussions focused exclusively on what Mr. Drake would be

permitted to say about those documents. At no point during those discussions (at

least none cited by St. Clair or that I can recall), nor at any time during the trial,

did St. Clair propose that the documents were independently admissible, nor did it

offer any explanation for why they would be found authentic and not excluded as

hearsay. St. Clair's *post hoc* argument that the absence of the schematics hurt its

case before the jury does not permit me to consider the admissibility of documents

for the first time at this late stage.

Finally, St. Clair asserts that I "reverse[d] [my] earlier ruling" regarding the

boundaries of Drake's testimony on the schematics. (Pl.'s Br. at 4 (D.I. 997).)

The record shows otherwise. Beginning with the pretrial conference, I was

explicit that Mr. Drake would not be permitted to give testimony outside his expert

report. (Pretrial Conf. Tr. 55:18 - 20, May 15, 2015.) I reinforced that admonition

following the first day of trial when I ruled that Drake, in his upcoming testimony,

would be allowed to speak about the Toshiba schematics only insofar as they appeared in his expert report and only to the extent he gave an opinion on the schematics in that report. (Trial Tr. Vol. A, 331:8 – 333:13, June 15, 2015.) Indeed, I described generally the boundaries within which he would be permitted to discuss the schematics, *i.e.* allowing that he could explain that he used them to determine that Toshiba's products included a "data processing system." (Trial Tr. Vol. A, 332:19 – 333:13, June 15, 2015.)

At trial the following day, St. Clair ignored that instruction, and tried to push beyond the permitted subject matter by asking Drake what he relied on "to get a better indication of how the Toshiba laptop would work." (Trial Tr. Vol. B, 410:12 - 14, June 16, 2015.) In refusing to allow such testimony, I was endeavoring to be consistent with my earlier rulings and the strictures of Rule 26. That St. Clair would not be permitted to ignore Rule 26 was a constant throughout the proceedings.

None of St. Clair's three arguments regarding the Toshiba schematics demonstrate any error, let alone a prejudicial one. As a result, those arguments cannot support the motion for a new trial.

**B.    Exclusion of Specifications Offered through Michael J. Wagner**

St. Clair also asserts that I erred by refusing to admit into evidence specification sheets allegedly detailing Toshiba products. Those documents were referenced by St. Clair's damages expert, Mr. Michael J. Wagner, in his expert report. They were taken from the internet, were produced in discovery by St.

7

Clair, not Toshiba, and were never authenticated at any time before or during trial. Toshiba properly objected to the admission of the specification sheets as both unauthenticated and inadmissible hearsay. (Trial Tr. Vol. B, 348:25 – 349:2, June 16, 2015.)

As to authentication, St. Clair attempted to overcome that evidentiary hurdle by asserting that the documents could be authenticated by Mr. Wagner. (Trial Tr. Vol. B, 350:15 - 21, June 16, 2015.) But Wagner was a damages expert with no expertise in the specifics of Toshiba technology, and consequently was not qualified to provide any such authentication. (*See, e.g.*, Trial Tr. Vol. B, 600:4 - 9, June 16, 2015 (wherein Wagner testifies that he found the relevant information by "go[ing] out and collect[ing] that from [Toshiba's] website"); Trial Tr. Vol. B, 632:3 - 5, June 16, 2015 (wherein Wagner states: "I have some technical expertise, but I am not applying that in this case. I am 100% relying on [Drake] for my technical judgments.").)[5] As to hearsay, St. Clair sought to overcome the objection by asserting that the documents were a statement against interest because they show Toshiba admitting to practicing the Intel HD audio technology which is central to the case. (Trial Tr. Vol. B 352:4 - 9, June 16, 2015.) That argument also had to be rejected, as there was no indication whatsoever that, even if Toshiba was the entity that published the technical specifications (which was

---

[5] St. Clair gives no explanation for why, if the specifications in question were so significant, it did not simply lay an appropriate foundation for their admission into evidence through requests for admissions or deposition testimony by a qualified Toshiba expert.

never established), it was making a statement "contrary to [its] proprietary or pecuniary interest or … expos[ing] [it] to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A).[6]

My refusal to permit St. Clair, through Mr. Wagner, to submit into evidence documents that could not be properly authenticated or shown to be non-hearsay was a straightforward application of the Federal Rules of Evidence.[7] The claim to the contrary provides no grounds for a new trial.

### C.   Exclusion of Intel License

Finally, St. Clair argues that I erred in refusing to admit into evidence a settlement agreement between St. Clair and Intel (among others).[8] But, in addition to being of dubious relevance, the license was inadmissible because the danger of unfair prejudice that it presented substantially outweighed its probative value. Fed. R. Evid. 403.

---

[6] In its reply brief, St. Clair suggests that the documents may also overcome a hearsay challenge under the business records exception. (Pl.'s Rep. Br. at 3 - 4 (D.I. 1011) ("Toshiba has no factual basis to assert that these exhibits are not what they purport to be, i.e. Toshiba documents generated by Toshiba and made available by Toshiba in the ordinary course of its business.").) Setting aside the obvious shortcomings of that argument (including the complete lack of any foundation for it), it was raised for the first time in a post-trial reply brief and consequently will not be considered.

[7] Moreover, it was clear, based on the circumstances, that the documents St. Clair was attempting to admit were not important to what Wagner was speaking about, but rather were an attempt to plug a hole in St. Clair's liability case.

[8] The assertion that my refusal to admit the settlement agreement was error is ironic, given that St. Clair had originally served a Motion in Limine to preclude Toshiba from introducing the same agreement. (Joint Proposed Final Pretrial Order at 27 (D.I. 946).)

First, the probative value of the agreement was limited. St. Clair admits that "the specific '163 patent that is at issue here ... was not specifically called out" in the agreement. (Pretrial Conf. Tr. 120:5 - 7, May 15, 2015.) Indeed, the settlement dealt with the patent at issue only tangentially. The license, covering six different patents held by St. Clair, addresses the '163 patent only insofar as the opposing party in the agreement was granted an unusual "springing license," which would go into effect at some future date, under specific conditions. (Pl.'s Br. Ex. 8 at 3 - 4 (D.I. 997).)

As to unfair prejudice, evidence of the agreement was apparently going to be used by St. Clair to suggest to the jury that the '163 patent must be valid and must cover Intel's technology and thus Toshiba's products. The intended argument would be that Intel and the other former defendants certainly would not have spent millions of dollars for a license if they did not believe the patent truly covered the accused technology. (*See, e.g.*, Pretrial Conf. Tr. 115:25 - 117:7, May 15, 2015 (explaining the evidentiary value of the settlement agreements to St. Clair).) Because that inference would be unfairly prejudicial in the absence of any supporting expert technical testimony, and because the actual probative value of the agreement was very limited, I excluded the evidence of the settlement under Rule 403(b). (Pretrial Conf. Tr. 120:18 - 123:17, May 15, 2015; Fed. R. Evid. 403.)

As to the assertion that the license agreement was admissible as evidence of "motive" under Rule 408(b) of the Federal Rules of Evidence, St. Clair is raising

10

11

that rationale for the first time in the present motion and thus cannot be permitted to argue the point, odd as it is.

Again, St. Clair has failed to demonstrate any error in determining the admissibility of evidence and consequently has not supported its motion for a new trial.